Barnard, P J.
The plaintiffs owned three-tenths of certain lands in Suffolk county. Cornelia Palmer owned one half- and a corporation called the Albert Palmer Company, owned one-tenth. The remaining tenth was owned by a Mr. Weed. All the parties agreed, on the 4th of March, 1881, to convey the property to Leon B. Be Bost for $45,000. The deed was to be delivered April 1, 1881, and the title was to be a good title and free from all incumbrances except those specified in the agreement amounting to $5,650. The purchaser was not bound to take unless all the several parts of the entire title were good.
. On the 4th of March, 1881, the date of the agreement to sell to Leon B. Be Bost, the several owners executed a paper to Agustus B. Be Bost, in which a debt of $5,000 was acknowledged to him for services as broker in effecting the sale, and they each agreed to pay the proportion thereof according to the interest they each had in the title, out of the first moneys received from Leon B. Be Bost upon the completion of the sale.
On the 1st of April, 1881, the contraer was not carried out. There wag a question made as to the title of the Albert Palmer Company tenth, and the purchaser refused to take the title until this difficulty was removed.
On the 6th of April, 1881, Stephen A. Palmer and Albert Palmer bought the plaintiff’s three-tenths. In the agreement for this purchase there was inserted the clause which is the basis of this action:
“And also the parties of the first part (the Palmers) jointly agree to protect and preserve harmless, the said parties of the second part (Francis and Sarah Hill) from any and all liability and damages arising from and under this sale of this land, by reason of any contract heretofore made with Leon B. Be Bost * * .”
Augustus B Be Bost sued and recovered a judgment against the plaintiff, for the proper proportional part of the commission as upon a good sale. The actions were separate and in each case Be Bost got judgment.
These judgments were reversed by the general term, but at an expense of $895.75. The reason of the reversal was that the title of the Hills was good, and that they were ready and that the purchaser might have taken their title, but without it there was no liability for the commission.
*807 We think the contract covered the costs of defending against the claim of Augustus B. De Bost. The evidence in the case shows that the contract to sell to Levi B. De Bost, did not expire on the 1st of April, 1881, by reason of his failure. A delay was agreed upon to complete the chain of title in the Palmer Company tenth.
Under the circumstances surrounding the contract containing the covenant of indemnity, it appears that the Palmers agreed to buy out the plaintiffs and take the risk of defending Be Bost.
It was known to all that if the contract was good, the commissions were due. It was good if the sale was carried out. The indemnitors to the Hills took the plaintiffs’ title to themselves, while the plaintiff was under a valid agreement to convey to another person. In the fall of 1882, Leon B. Be Bost obtained a decree for specific performance of the contract, the decree covering not only the interests of the Palmers, which they owned at the original agreement, but also the three-tenths bought of the plaintiffs.
The words of the indemnity were designed to put the defendants in the place of the plaintiffs, in respect to the contract. They chose to recite in it that the agreement was dead by the fault of Be Bost, but the fact was otherwise. The costs incurred in defending Augustus Be Bost grew directly out of the failure of the defendants.
■ If they had paid the commission there would have been no suit. They failed to execute the Be Bost contract and they agreed to save harmless the plaintiff from damages which resulted to the plaintiffs under it. If the Be Bost action had been affirmed there is no doubt but that the costs would have followed the decision under the indemnification clause in this agreement. The proof is very convincing that the clause was designed to cover the costs of a defense .against a claim under the Be Bost agreement.
It was provided by it that if any claim should be made against the plaintiffs they should at once notify a specified attorney as the attorney of the plaintiffs, “at the proper costs and charges of the parties of the first part (defendants).
Albert Palmer employed the attorney, or at least controlled the answers of the plaintiffs, and it was stated when the agreement of indemnity was signed that the contract “covered both claims,” referring to .the commission and the specific performance of the Be Bost contract, and that the plaintiffs were “to step out from under the whole thing; lands, these two prospective law suits and everything, which ■Mr. Palmer said was in assent to Mr. Hill’s proposition.”
It was therefore the understanding of the parties outside of the covenant.
It was executed in accordance with that verbal agreement, and the words of the writing are broad enough to cover the claim, construed in the light of the circumstances surrounding the execution of the paper.
*808 The question of the surrender of the covenant was one entirely of fact.
The proof is substantially confined to two people, Mr. TTill and Mr. Palmer.
The finding could not be disturbed in any event, but it is proper to say that it is in accordance with the probabilities of the transaction.
The judgment should therefore be affirmed, with costs.
Pratt and Dykman, concur.